IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| CATHERINE G. WARREN | * | CIVIL ACTION NO. 05-1637 |
| VERSUS | * | JUDGE JAMES |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Plaintiff, Catherine G. Warren ("Warren"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income ("SSI") benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). On May 24, 2006, the undersigned issued a report and recommendation affirming the Commissioner's denial of Warren's application for disability insurance benefits. However, that report and recommendation failed to address Warren's application for SSI benefits. Therefore, the appeal was referred back to the undersigned for a supplementary report and recommendation on the issue of Warren's entitlement to SSI benefits. For the reasons given below, it is recommended that the decision of the Commissioner regarding the plaintiff's right to supplemental security income benefits be **REVERSED and that this matter be REMANDED to the Commissioner for further proceedings in accordance with this ruling.**

Introduction

Warren filed an application for disability benefits on March 18, 2003, alleging a disability onset date of October 1, 1996[1], due to vertigo, a right knee injury, sinus problems, depression, a

---

[1] Warren initially alleged an onset date of September 1991; however, Warren had previously filed an application for benefits, which was denied in October 1996, making it her

hernia, vision and hearing problems, arthritis, and migraines. (Tr. 18). After conducting a hearing, Administrative Law Judge ("ALJ") W. Thomas Bundy denied Warren's application on October 14, 2004. (Tr. 17-27). The ALJ found that Warren's impairments from degenerative joint disease of the right knee, low back pain, and undifferentiated somatoform disorder were "severe" within the meaning of the Commissioner's regulations, but not severe enough to meet or medically equal the impairments listed in 20 C. F.R. Part 404, Subpt. P, App. 1 (hereinafter *Listing*). (Tr. 20). Continuing his analysis, and conducting a review of the relevant medical evidence and hearing testimony, the ALJ concluded that Warren retained a residual functional capacity ("RFC") to perform a full range of light work[2] with the following limitations: (1) the ability to occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; (2) an inability to climb ladders, ropes, and scaffolds; (3) moderate limitations in the ability to maintain social functioning; and (4) mild limitations in activities of daily living and the ability to maintain concentration, persistence, and pace. (Tr. 22). Based on this RFC, the ALJ concluded that Warren could not perform her past relevant work as a nurse's aide, an occupation classified as medium work, and, under the fifth step of the Commissioner's sequential analysis, considered

---

new onset date.

[2] The Commissioner's regulations define light work as:

> involv[ing] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

whether Warren could perform any job existing in significant numbers in the national economy. (Tr. 23). Relying on sections 202.11 and 202.18 of the Commissioner's Medical-Vocational Guidelines ("Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that Warren could perform the basic physical and mental demands of unskilled work at the light level of exertion and therefore was not disabled. Because the decision was made in reliance on the Grids, the ALJ did not seek an opinion from a vocational expert. (Tr. 25).

Standard of Review; Substantial Evidence

This Court will uphold an ALJ's determination that a claimant is not disabled if the findings of fact upon which it is based are supported by substantial evidence, and if it was derived from a proper application of relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). At no time should the Court "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that

finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**Analysis**

Warren alleges the following points of error in the above analysis: (1) the ALJ failed to articulate good cause for rejecting two treating physicians' opinions; (2) the ALJ, in determining that Warren could perform jobs available in the national economy, erred in relying on the Grids and failing to obtain an opinion from a vocational expert; and (3) the ALJ's RFC finding is not based on substantial evidence.

Rejection of Treating Physician's Opinion

Warren argues that the ALJ committed reversible error in failing to set forth the requisite good cause for rejecting the opinion of Dr. Thompson, Warren's long-time treating physician, and in ignoring the opinion of Dr. Spires, her treating orthopedic surgeon. According to Warren, the ALJ was required to analyze said opinions in accordance with the six factors set forth in 20 C.F.R. § 404.1527(d)(2) before deciding that the opinions were not to be given controlling weight. With regard to Dr. Thompson's opinion, the undersigned agrees.

A subsection of the Commissioner's regulation dealing with evaluation of treating sources' opinions ends with the statement, "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2). As a treating source's opinion is given controlling weight if it is well-supported by and consistent with other medical evidence, techniques, and opinions, often such controlling opinions yield little in the way of detailed analysis in ALJ decisions. *Id.* An opinion that is not entitled to controlling weight, however, deserves a much greater discussion under the Commissioner's regulations. Specifically, an ALJ must consider (1) the physician's length of

treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the extent to which the opinion is supported by medical evidence; (5) the opinion's consistency with the rest of the record as a whole; (6) the specialization of the treating physician; and (7) other miscellaneous, but relevant, factors. *See id.* at (d)(2)(i)-(ii), (d)(3)-(6); *Newton*, 209 F.3d 448, 456 (5th Cir. 2000) (requiring consideration of factors before declining to give little or no weight to a treating source's opinion)). Even if a treating source's opinion is not entitled to controlling weight because it is unsupported by or inconsistent with other medical evidence, those "opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." SSR 96-2p, 61 F.R. 34490, 34491 (July 2, 1996). Consequently, failure to give great weight to the treating physician's opinion absent good cause for rejecting it constitutes disregard of applicable principles of law and is grounds for a remand. *Newton*, 209 F.3d at 455-6.

Prior to the ALJ's disability determination, Dr. Thompson submitted a form entitled "Medical Statement Regarding Physical Abilities and Limitations for Social Security Disability Claim." (Tr. 210). On this form, Dr. Thompson noted diagnoses of degenerative joint disease, chronic back pain, depression, and anxiety. *Id.* In light of these diagnoses, Dr. Thompson opined that Warren is unable to work, to stand for more than fifteen minutes a time, or to sit for than 60 minutes at a time. *Id.* He further opined that Warren can lift ten pounds on a occasional basis and five pounds on a frequent basis; that she can never bend; and that she can frequently manipulate her right and left hands. *Id.* Dr. Thompson also stated that Warren needs to elevate her legs most of the time during an eight hour work day and that her pain level is moderate. *Id.*

In declining to give Dr. Thompson's opinion controlling weight, the ALJ stated the following:

6

> Pursuant to SSR 96-5p, the treating source's opinion can not be given controlling weight as it is not on medical issues regarding the nature and severity of the claimant's impairments, but is an administrative finding that is dispositive of the case, and therefore, reserved to the Commissioner of Social Security. Dr. Thompson opines that the claimant cannot work, and gives a number of work-related limitations, but does not specify what findings support these conclusions. Therefore, the undersigned has considered Dr. Thompson's opinion and given it little weight . . . .

(Tr. 23). This language indicates that the ALJ rejected Dr. Thompson's opinion because it was conclusory and in the nature of a residual functional capacity or an "unable to work/disabled" finding, which are determinations reserved to the ALJ. According to the Fifth Circuit:

> *[W]hen good cause is shown*, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 2001)(emphasis added) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). The Commissioner argues that the ALJ was correct in finding that Dr. Thompson's opinion is conclusory and therefore not entitled to controlling weight. Accordingly, the Commissioner appears to be arguing that Dr. Thompson's opinion does not qualify as a medical opinion to which the § 404.1527 six-factor analysis would apply.

Not all treating physician opinions are subject to the six-factor analysis. Subsection (d) of § 404.1527, which delineates the six-factor test, is entitled "How we [the SSA] weigh medical opinions," and, by its terms, only applies to medical opinions. 20 C.F.R. § 404.1527(d). SSR 96-6p defines medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite his or her impairment(s), and the individual's physical or mental restrictions." Soc. Sec. Rul. 96-6p. However, physicians' opinions on an issue

7

reserved to the Commissioner, such as whether a claimant is "disabled" or "unable to work," are not considered medical opinions, and regardless of who they are from, they are given no special significance. 20 C.F.R. § 404.1527(e). Furthermore, the determination of an individual's residual functional capacity is reserved to the Commissioner. Soc. Sec. Rul. 96-6p.

Having evaluated Dr. Thompson's opinion in accordance with the foregoing authority, the undersigned concludes that Dr. Thompson did not merely state that Warren was unable to work nor did he fail to specify support for his opinion. Rather, he provided specific diagnoses and Warren's work related limitations and abilities resulting from these diagnoses. *Id.* In fact, the ALJ himself stated that the medical evidence indicated that Warren has degenerative joint disease of the right knee and low back pain, and that these impairments are severe within the meaning of the regulations.[3] (Tr. 20). Furthermore, the record contains medical evidence of Warren's alleged back and knee impairments which is consistent with Dr. Thompson's diagnoses. For example, there are numerous medical records dated from 2002 through 2004 which indicate Dr. Thompson's impressions that Warren has degenerative joint disease and chronic back pain. (Tr. 146, 147, 150, 152, 211, 212, 215, 216, 218, 219, 220, 226, 227, 232). Also, Dr. S.I. Courtman, who examined Warren at the state agency's request, indicated that an x-ray of Warren's right knee showed moderate arthritic changes and moderate narrowing of the medial joint space. (Tr. 187). Finally, an MRI of Warren's lumbar spine taken at Morehouse General Hospital on May 13, 2004, showed slight disc bulges at L4-L5 and L5-S1, but no herniation, while a March 12, 2003 lumbar spine exam showed mild diffuse bone demineralization and mild arthritic changes. (Tr. 261, 178).

---

[3] Although the ALJ found that these impairments are severe, he concluded that they were not severe enough to meet or medically equal the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

Therefore, the undersigned cannot agree with the ALJ's finding that the opinion is a conclusory, administrative one. The opinion contains both Dr. Thompson's diagnoses and his opinion regarding what Warren can still do despite her impairments and her physical restrictions. Furthermore, the opinion is very similar to other treating physician opinions that the Fifth Circuit has deemed subject to analysis under the § 404.1527 factors.[4]

Moreover, although Dr. Thompson's opinion is similar to an RFC assessment, the regulations envision treating sources providing opinions on individuals' physical limitations and abilities. "The regulations describe two distinct kinds of assessments of what an individual can do despite the presence of severe impairment(s)."

> The first is a . . . "statement about what you can still do despite your impairments" made by a individual's medical source and based on that source's own medical findings." This "medical source statement" is an opinion submitted by a medical source as part of a medical report. The second category of assessments is the RFC assessment . . . which is the adjudicator's ultimate finding of "what you can still do despite your limitations." Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing . . . .

61 FR 34471. Because Dr. Thompson's opinion indicates the impairments that he believes Warren has, and his belief as to what Warren can still do despite those impairments, the opinion qualifies as a medical source statement. *Id.* "Medical source statements submitted by treating

---

[4] In *Newton*, the claimant's treating physician opined that "Newton could occasionally lift up to ten pounds; stand or walk less than two hours per regular work day; sit continuously for thirty minutes at a time, for a total of two hours out of an eight-hour work day; and stand, walk or sit for a combined total of three hours out of an eight-hour workday." 209 F.3d at 453. He also found that "Newton was able to reach and handle items and occasionally balance, stoop, kneel, crouch, crawl, reach or drive, but she could not climb or perform repetitive operations of foot controls." *Id.* In *Myers v. Apfel*, 238 F.3d 617, 618 (5th Cir. 2001), the claimant's treating physician concluded that Myers "could lift ten pounds occasionally, lift one pound frequently, stand two hours out of the day for ten minutes at a time, and sit for four hours out of the day for thirty minutes at a time."

9

sources provide medical opinions which are entitled to special significance and may be entitled to controlling weight on issues concerning the nature and severity of an individual's impairment." *Id.* Accordingly, "adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 . . ., providing appropriate explanations for accepting or rejecting such opinions." *Newton*, 209 F.3d at 456 (citing SSR 96-5p, 61 FR 34471, 34474 (July 2, 1996).

The Commissioner points to various medical records in which Dr. Thompson indicated that he observed no clubbing, cyanosis, or edema in Warren's extremities and to records indicating that Warren was alert, positive cheerful, and verbal. Comm. Br. at 5. The Commissioner also notes Warren's testimony that she walks her dog on a daily basis, although she complained of pain when she walks long distances. Comm. Br. 4-5. Finally, as further support for the ALJ's decision, the Commissioner cites the Fifth Circuit holding that the ALJ is ". . . free to reject the opinion of any physician when the evidence supports a contrary conclusion and that ". . . a treating physician's opinion regarding the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence." *Id.* at 3.

The undersigned concedes that there are portions of the opinion that could potentially be utilized by the ALJ to support a finding that Dr. Thompson's opinion should not be given controlling weight because it was not supported by medically acceptable clinical laboratory diagnostic techniques or was otherwise unsupported by the evidence. For example, the ALJ stated that "[a]lthough [Dr. Thompson] continues to diagnose pain due to cervical disk syndrome, the objective evidence does not support this diagnosis" in that "[x]-rays of the cervical spine, on

10

three separate occasions, have not revealed any abnormalities of the cervical spine." (Tr. 22). The ALJ also stated that examinations of Warren's knee have resulted in minimal findings. *Id.* However, Dr. Thompson did not list cervical disk syndrome as a diagnosis on the medical assessment form, and the ALJ himself stated that the medical evidence indicated that Warren has degenerative joint disease of the right knee and low back pain, both of which the ALJ deemed severe within the meaning of the regulations.[5] (Tr. 20). Therefore, the sufficiency of these explanations is questionable. Moreover, even assuming that the reasons set forth by the Commissioner would warrant the ALJ's rejection of Dr. Thompson's opinion, the regulations still mandate that the ALJ evaluate the opinion according to the §404.1527 factors.

The ALJ specifically stated that Dr. Thompson's opinion was not given controlling weight because it was an administrative finding reserved to the Commissioner. It is well-settled that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455; *See also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.")). *See* 20 C.F.R. 404.1527(d); *Newton*, 209 F.3d 448, 456 (5th Cir. 2000). Furthermore, this Court is unable to discern from the ALJ's opinion whether he analyzed Dr. Thompson's opinion under the § 404.1527 factors.[6] Therefore,

---

[5]Although the ALJ stated that these impairments were severe within the meaning of the regulations, he concluded that they were not severe enough to meet the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20).

[6]While the ALJ never explicitly noted any of the § 404.1527 factors, he did state that three x-rays of Warren's cervical spine have shown no abnormalities and that findings resulting from Warren's knee examinations have been minimal. Although the potential insufficiency of these findings has already been noted, they are possibly relevant to the supportability and consistency factors in § 404.1527. However, there is no indication that the ALJ considered the remaining factors. Although not required to ". . . specifically enumerate and discuss each factor,"

11

the undersigned must conclude that the ALJ's decision not to give Dr. Thompson's opinion controlling weight is not supported by substantial evidence and is, therefore, reversible error. This decision should not be construed as requiring the ALJ to give Dr. Thompson's opinion controlling weight. Rather, this Court is simply saying that the ALJ has not shown good cause for why he gave little weight to Dr. Thompson's opinion. Accordingly, this case should be remanded to the ALJ so that he may do so.[7]

Warren also claims that the ALJ erred in ignoring Dr. Timothy Spires' July 14, 2003, letter indicating the following:

> My examination of Ms. Warren on March 28, 2003 showed her to have some arthritis of the knee among other problems that on follow-up on May 26, 2003, she continued to have problems with pain and examination did show patellar apprehension and tenderness but she did have a full range of motion. At present, I have insufficient information to say whether she could return to work. If her problems were limited her knee, but she does have *significant other pathology that limits her activity to return to work at this time.*

(Tr. 288) (emphasis added). However, not only is this letter contradictory, but the statement that

---

the ALJ must provide some indication that he has at least considered the six factors. *Estrada v. Barnhart*, 2006 WL 1347970 (citing *Witz v. Comm'r of Social Sec. Admin.*, 412 F.Supp.2d 601, 608 (E.D.Tex. 2005) (finding that failure to specifically mention certain factors is harmless error when those factors weigh against giving controlling weight to the treating physician's opinion). In Warren's case, some of the factors not mentioned by the ALJ weigh in favor of accepting Dr. Thompson's opinion, namely the length of treatment, frequency of examination, and nature and extent of the doctor-patient relationship.

[7]Warren also cites *Newton* for the proposition that, to the extent the ALJ felt that Dr. Thompson's opinion was insufficient, the proper remedy was to contact Dr. Thompson and request additional information supporting her opinion. However, *Newton* also states that further contact is only required when the individual can show that she has been prejudiced from the failure to request additional information, which is ". . . established by showing that additional evidence would have been produced . . . and that the additional evidence might have led to a different decision." 209 F.3d at 458 (citing *Ripley*, 67 F.3d at 557 n.22.). Warren has made no such showing.

Warren has "significant other pathology that limits her activity to return to work at this time" does not qualify as a medical opinion entitled to any consideration by the ALJ, much less analysis under the § 404.1527 factors. *See* Soc. Sec. Rul. 96-6p;20 C.F.R. § 404.1527(e).

Failure to Obtain Vocational Expert Opinion

Warren next argues that the Commissioner failed to sustain his burden of establishing that there is other work in the national economy that Mrs. Warren can perform due to the ALJ's failure to obtain vocational expert testimony. Warren contends that vocational expert testimony is necessary in light of her "significant non-exertional impairments." Plts. Br. at 3. The ALJ stated in his decision that "[t]he claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations;" accordingly, the ALJ concluded that no vocational expert testimony was needed. (Tr. 25-26). As the Commissioner points out, the Fifth Circuit has stated that "[w]hen the characteristics of the claimant correspond to the criteria in the Medical-Vocational Guidelines of the regulations, and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).[8] Therefore, the ALJ was entitled to rely solely on the grids if Warren's

---

[8]Warren cites *Newton v. Apfel* for the proposition that the Fifth Circuit has held that "if a claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy." Plts. Br. at 3 (citing 209 F.3d 448, 458 (5th Cir. 2000)). While this might appear at first to contradict the aforementioned statement, a cursory reading of the language in *Newton* reveals otherwise. In the sentence immediately prior to the one quoted by Warren, the court states that the Commissioner may rely solely on the grids when impairments are solely exertional or nonexertional impairments do not "*sufficiently affect the claimant's residual functional capacity.*" *Newton*, 209 F.3d at 458 (emphasis added). Furthermore, the courts cites *Fraga* as support for this proposition. *Id.* Therefore, the two cases are not

13

nonexertional limitations are not significant enough to affect her residual functional capacity.

In support of her claim, Warren asserts that the ALJ found that Warren was limited to performing simple, repetitive functions and that the regulations provide that nonexertional limitations include "difficulty understanding or remembering detailed instructions." *Id.* (citing 20 C.F.R. § 404.1569a(c)(1)(iii)). Therefore, argues Warren, her limitation to performing simple, repetitive functions, which means she would have difficultly performing detailed instructions, is a nonexertional limitation warranting testimony by a vocational expert. *Id.* at 3. However, Warren mis-characterizes the ALJ's findings. No where did the ALJ state that Warren was *limited* to performing simple, repetitive functions; rather, he merely stated that Warren is *capable* of doing so and that no physician has stated otherwise. (Tr. 24). Accordingly, the ALJ concluded that Warren is capable of performing light or sedentary work. *Id.* Moreover, Dr. Linda Hartwell, the state agency reviewing examiner, specifically found that Warren was not significantly limited in her ability to carry out detailed instructions.[9] (Tr. 204). Therefore, Warren has failed to establish the existence of a significant nonexertional impairment in this regard.

Warren next asserts that the ALJ's finding that she has moderate limitations in social

---

inconsistent.

[9]Warren also cites an Eight Circuit and a Tenth Circuit case in which the court remanded the case due to an inconsistency between the ALJ's conclusion that the plaintiff was limited to following simple instructions and the higher level reasoning required in some unskilled sedentary jobs. Plts. B. at 2 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). However, again, no where did the ALJ state that Warren was limited to performing simple, repetitive functions. Furthermore, Dr. Hartwell concluded that Warren is not significantly limited in her ability to carry out detailed instructions. Therefore, Warren's reliance on the aforementioned cases, which are not controlling in the Fifth Circuit, is misplaced.

14

functioning is also a significant nonexertional limitation as it would preclude jobs where an individual is in close contact with others. Dr. Hartwell did opine that Warren suffers from undifferentiated somatoform disorder and histrionic personality disorder and that Warren is moderately limited in her ability to interact appropriately with the general public and to set realistic goals or make plans independently of others. (Tr. 196,197,205). Warren claims that these limitations would "impact [her] ability to perform the mental demands of unskilled work, which include the ability to 'respond appropriately to supervision, coworkers, and usual work situations.'" Plts. B. at 4. However, as the Commissioner notes, Dr. Hartwell specifically found that Warren is not significantly limited in (1) her ability to accept instructions and respond appropriately to criticism from supervisors; (2) her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; or (3) her ability to respond appropriately to changes in the work setting. (Tr. 205). Furthermore, Dr. Hartwell concluded that Warren is "mentally capable of functioning in the work setting." (Tr. 207). Hence, there is substantial evidence in the record to support the ALJ's finding that the fact that Warren was moderately limited in social functioning and in her ability to interact with the general public and set goals are not significant nonexertional limitations such that vocational expert testimony was required.

Warren further asserts that the fact that the ALJ concluded that Warren's residual functional capacity for a full range of light work is reduced by the ability to occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl indicates that vocational expert testimony was needed to identify which unskilled light work jobs Warren was capable of performing. Warren also argues that the ALJ erred in concluding that her pain was not a non-exertional factor that limited her ability to perform light work. In light of the conclusion that the

15

ALJ's failure to give controlling weight to Dr. Thompson's opinion is not supported by substantial evidence, the undersigned must conclude that the ALJ's decision not to obtain vocational expert testimony regarding the effect of the above nonexertional limitations are similarly not supported by substantial evidence.

The diagnoses and physical abilities/limitations contained in Dr. Thompson's opinion are relevant to the above limitations set forth by the ALJ and, accordingly, are relevant to the determination of whether such limitations are significant enough to require vocational expert testimony. For example, Dr. Thompson's opinion that Warren can *never* bend is undoubtedly relevant to her ability to stoop, kneel, crouch, crawl etc. Furthermore, the physical limitations and abilities set forth by Dr. Thompson are based on his opinion of Warren's pain level. Because the ALJ has not shown good cause for failing to give controlling weight to Dr. Thompson's opinion, which is relevant to a determination of the significance of Warren's nonexertional limitations, the ALJ's conclusion that Warren's capacity for light work has not been compromised by any nonexertional limitations is not supported by substantial evidence.[10] Again, in reaching this conclusion, the undersigned is not stating that the ALJ is required on remand to find that the above nonexertional limitations are significant and therefore require vocational expert testimony; rather, the ALJ must simply show good cause for why he failed to give controlling weight to Dr.

---

[10]Warren also argues that the ALJ erred in concluding that Warren's visual impairment was not a significant nonexertional impairment requiring vocational expert testimony. There are medical records indicating that Warren has bilateral macular degeneration; however, as the ALJ noted, the same doctor that diagnosed this condition indicated that Warren's corrected visual acuity was 20/20 in both eyes and prescribed glasses for Warren. Therefore, the ALJ's decision that Warren's vision problems were not significant non-exertional limitations is supported by substantial evidence in the record.

Thompson's opinion, which is relevant to the significance of such nonexertional limitations.[11]

## Conclusion

**For the reasons stated above, it is recommended that the Commissioner's decision to deny supplemental security income benefits be REVERSED and REMANDED for further proceedings as outlined in this ruling.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

---

[11]In her third point of error, the plaintiff contends that the ALJ's finding that she can perform light work is not supported by substantial evidence because the RFC assessment at the state agency level was completed by a disability specialist rather than a physician. Pl. Br. at 10. However, regardless of what happened at the state agency level, the regulations clearly state that, if a matter reaches the level of review before the ALJ, the ALJ "is responsible for assessing your residual functional capacity." 20 C.F.R. §§ 404.1546. Therefore, this argument is without merit. Warren also argues that the ALJ's failure to obtain an RFC assessment from a physician is reversible error. This argument appears to be premised on the absence of a physician-prepared medical source statement corroborating the ALJ's RFC assessment. However, again, the regulations clearly state that the ALJ is responsible for assessing a claimant's RFC. *Id.* Furthermore, as the commissioner points out, the Fifth Circuit has stated that the lack of a medical source statement is not reversible error; rather, in the event that no medical source statement supports the ALJ's RFC assessment, ". . . the inquiry focuses on whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.). Therefore, the fact that the ALJ rather than a physician provided the RFC assessment in the case and the lack of a medical source supporting such assessment do not, on their own, constitute reversible error. Regarding the substantial evidence inquiry, the undersigned has already determined that the ALJ's decision is not supported by substantial evidence and should therefore be reversed and remanded for further proceedings.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 3rd day of October, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE